UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KORY T. O'BRIEN,<br><br>            Plaintiff,<br><br>      vs.<br><br>GIBSON, et al.,<br><br>            Defendants. | **1:21-cv-01574-GSA-PC**<br><br>**ORDER FOR CLERK TO RANDOMLY ASSIGN A UNITED STATES DISTRICT JUDGE TO THIS CASE**<br><br>**AND**<br><br>**FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION BE DENIED**<br><br>**(ECF No. 11.)**<br><br>**OBJECTIONS DUE WITHIN FOURTEEN DAYS** |

**I.    BACKGROUND**

Kory T. O'Brien ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed the Complaint commencing this action on October 25, 2021. (ECF No. 1.) The Complaint awaits the court's requisite screening pursuant to 28 U.S.C. § 1915.

On June 17, 2022, Plaintiff filed a motion for a temporary restraining order and/or preliminary injunction. (ECF No. 11.)

1

## II.     MOTIONS FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Procedurally, a federal district court may issue emergency injunctive relief only if it has personal jurisdiction over the parties and subject matter jurisdiction over the lawsuit. See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 350 (1999) (noting that one "becomes a party officially, and is required to take action in that capacity, only upon service of summons or other authority-asserting measure stating the time within which the party served must appear to defend."). Furthermore, the pendency of this action does not give the Court jurisdiction over prison officials in general. Summers v. Earth Island Inst., 555 U.S. 488, 491–93 (2009); Mayfield v. United States, 599 F.3d 964, 969 (9th Cir. 2010). The Court's jurisdiction is limited to the parties in this action and to the viable legal claims upon which this action is proceeding. Summers, 555 U.S. at 491−93; Mayfield, 599 F.3d at 969. The court may not attempt to determine the rights of persons not before it. See, e.g., Hitchman Coal & Coke Co. v. Mitchell, 245 U.S. 229, 234-35, 38 S.Ct. 65, 62 L.Ed. 260 (1916); Zepeda v. INS, 753 F.2d 719, 727-28 (9th Cir. 1983); Lathrop v. Unidentified, Wrecked & Abandoned Vessel, 817 F.Supp. 953, 961 (M.D. Fl. 1993); Kandlbinder v. Reagan, 713 F.Supp. 337, 339 (W.D. Mo. 1989); Suster v. Marshall, 952 F. Supp. 693, 701 (N.D. Ohio 1996); see also Califano v. Yamasaki, 442 U.S. 682, 702, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979) (injunctive relief must be "narrowly tailored to give only the relief to which plaintiffs are entitled"). Under Federal Rule of Civil Procedure 65(d)(2) an injunction binds only "the parties to the action," their "officers, agents, servants, employees, and attorneys," and "other persons who are in active concert or participation." Fed. R. Civ. P. 65(d)(2)(A)-(C).

A temporary restraining order (TRO) is an extraordinary measure of relief that a federal court may impose without notice to the adverse party if, in an affidavit or verified complaint, the moving party "clearly show[s] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). The substantive purpose of a TRO is to preserve the status quo before a preliminary injunction hearing may be held; its provisional remedial nature is designed merely to prevent irreparable

loss of rights prior to judgment. Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers, 415 U.S. 423, 439, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974). But the legal standard that applies to a motion for a TRO is the same as a motion for a preliminary injunction. See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001).

"A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008) (citation omitted); Epona v. Cty. of Ventura, 876 F.3d 1214, 1227 (9th Cir. 2017) (same). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter, 555 U.S. at 20 (citations omitted). An injunction may only be awarded upon a clear showing that the plaintiff is entitled to relief. Id. at 22 (citation omitted). "Under Winter, plaintiffs must establish that irreparable harm is *likely*, not just possible, in order to obtain a preliminary injunction." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011).

Requests for prospective relief are further limited by 18 U.S.C. § 3626(a)(1)(A) of the Prison Litigation Reform Act, which requires that the court find the "relief [sought] is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." Section 3626(a)(2) also places significant limits upon a court's power to grant preliminary injunctive relief to inmates. "Section 3626(a) therefore operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators – no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." Gilmore v. People of the State of California, 220 F.3d 987, 999 (9th Cir. 2000).

## IV.   PLAINTIFF'S MOTION

In his motion, Plaintiff seeks a temporary restraining order and/or preliminary injunction removing an alleged substantial burden being placed upon him and other Muslim inmates that prevents their participation in the religious observance of Ramadan unless they choose a diet that is contrary to their religious beliefs. Plaintiff claims he has been denied his rights at Valley State

Prison, Chowchilla, California, where he was previously incarcerated, and California Medical Facility in Vacaville, California, where he is currently incarcerated.

Plaintiff alleges that he has been denied his First Amendment right to exercise his religious freedom. He argues that the continuing deprivation of constitutional rights constitutes irreparable harm. He also argues that he is threatened with irreparable harm because his injury, not being allowed to participate in Ramadan, violates one of the essential tenets of the Islamic religion of which he is a practitioner. Specifically, Plaintiff states that "plaintiff and other Muslim inmates are in an unenviable position of having to chose between not being able to participate and practice the mandatory religious obligation of Ramadan or participate if the plaintiff and other Muslim inmates consume a diet that is contrary to the plaintiff's and other Muslim inmate's religious beliefs", which he claims is in violation of the first amendment and RLUIPA. He alleges that defendants Connie Gibson, Charles Richey, and the California Department of Corrections issued a memorandum dated February 12, 2021 that "inmates on the Kosher Diet program must transfer to the Mainline diet or the Religious Meat Alternative (RMA) Program to participate in the fast of Ramadan". Plaintiff states in his complaint, filed October 25, 2021, that neither the RMA diet nor Mainline diet follow Islamic law, and in his motion he asserts that as a result it has caused Plaintiff to not participate in Ramadan in the years 2021 and 2022, thus violating Plaintiff's religious beliefs.

Interestingly, in the recent case of Smith v. Gibson, 2022 US Dist. Lexis 1382 (N.D. Cal), Plaintiff Smith, a devout Muslim, alleged that while at Pelican Bay State prison he was unlawfully deprived of the regularly available Kosher Diet program (KDP) meals he claimed he required to satisfy his sincere Muslim beliefs. In the Smith decision the court stated, "In 2017, CDCR's then-director Kathleen Allison issued a '2017 Ramadan Memo' that directed that prison staff should not serve KDP meals to Muslim inmates during Ramadan because those meals are not shelf-stable….Ahead of Ramadan 2019, CDCR employee C. Richey drafted a memorandum articulating a meal policy that addresses the unique needs of Muslim inmates and reiterates that KDP meals were not shelf-stable and, therefore, were not appropriate for Ramadan participants who were fasting from sunrise to sundown…On March 12, 2019, defendant Connie Gipson, the

Director of the California Department of Corrections and Rehabilitation ("CDCR") Division of Adult Institutions, 'reviewed, signed and authorized the distribution' of the guidance drafted by Richey (the "2019 Ramadan Memo")". The <u>Smith</u> decision went on to state, "The Gipson Memo directed that California prisons could not serve Ramadan-participating inmates KDP meals during Ramadan because Kosher meals were not shelf stable and could pose health risks to Remadan participants".

In the case at bar, Plaintiff O'Brien names as defendants in his complaint both Connie Gipson and Charles Richey, and like in the <u>Smith</u> case above, Plaintiff here desired the Kosher diet, but was informed that a Muslim inmate "on the Kosher diet program is required to change their diets to religious meat alternative ("RMA") or mainline diet in order to participate in Ramadan". Plaintiff further states in his complaint that neither of those diets, RMA or Mainline diet, follow plaintiff's Muslim religious beliefs, and that in his opinion only the Kosher diet does.

Importantly, although the <u>Smith</u> case was a ruling on cross motions for summary judgment, and thus necessarily both fact specific in its findings, and its rulings based on those findings limited to that case, the <u>Smith</u> Court did conclude in part, "In sum, there is no evidence that requiring Muslim inmates to switch to the RMA plan during Ramadan 2019 in order to receive a hot post-fast meal substantially burdened Smith's sincerely held religious belief…CDCR created the RMA plan specifically to provide Muslim inmates with halal-complaint meals. Pelican Bay implemented that plan…".

The lesson here from an examination of the <u>Smith</u> case seems to be that how each individual prison implemented the CDCR policy directive mentioned above is very fact specific as to that individual institution, and as such renders the issuance of a TRO or preliminary injunction in cases of this nature premature, ill-conceived and unjustified. To underscore the point here, how VSP, where Plaintiff alleges the constitutional violation occurred, implemented the directive, verses how Vacaville, where Plaintiff is now currently housed, implemented the directive, may have been much different—ranging all the way from the vendors selected to deliver the food to the prison, to how each individual prison's food service handled and prepared the food.

Continuing on, Plaintiff argues that he will suffer by "being placed in hellfire" if his motion is not granted, whereas defendants' hardship if his motion is granted would merely be complying with the Department Operation Manual and giving equal treatment to all religious participants that regularly fast. (ECF No. 11 at 4:21.)

Plaintiff contends that he is likely to succeed on the merits of his religious claim because defendants have "created a policy that forces the plaintiff to choose between two sincerely held religious beliefs, imposing a substantial burden." (ECF No. 11 at 1-2.) He argues that the grant of relief will serve the public interest because it is in the public interest for prison officials to obey the law, especially the Constitution.

Finally, Plaintiff requests that he be excused from the requirement to post security under Rule 65(c) of the Federal Rules of Civil Procedure, because he in an indigent prisoner unable to post security.

## V. DISCUSSION

Beyond the discussion above regarding the Smith case, the court notes that on December 20, 2021, Plaintiff filed a notice of change of address indicating that he was transferred from Valley State Prison in Chowchilla, California to California Medical Facility in Vacaville, California. (ECF No. 6.) Since Plaintiff has been transferred from Valley State Prison and has not presented the court with any evidence demonstrating that he has a reasonable expectation of returning to Valley State Prison, his request for injunctive relief relating to the Statewide policy implemented at Valley State Prison (VSP) may be rendered moot. Nunez v. Diaz, No. 119CV00686SABPC, 2019 WL 4127205, at *2 (E.D. Cal. Aug. 30, 2019), report and recommendation adopted sub nom. Nunez v. Diaz, et al., No. 119CV00686AWISABPC, 2019 WL 5390531 (E.D. Cal. Oct. 22, 2019) (citing Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991) (*per curiam*); see also Andrews v. Cervantes, 493 F.3d 1047, 1053 n.5 (9th Cir. 2007)). However, it is important to note that a claim for prospective injunctive relief against staff

members at a particular correctional facility may not be mooted where a policy pursuant to which the alleged violation occurred was system wide and one of the defendants was in charge of the policy (see, Walker v Beard, 789 F.3rd 1125 at 1132).

Assuming for the moment that Plaintiff's request for injunctive relief is not moot, Plaintiff has still not made a sufficient showing to warrant the granting of a temporary restraining order and/or preliminary injunction.  Plaintiff filed his motion for TRO and/or preliminary injunction on June 17, 2022, (ECF No. 11), and no defendant has yet been served with process as his complaint has not as yet been screened.  Thus, until one or more of the defendants have been served with process, a court is generally held to lack personal jurisdiction over them and thus may not grant injunctive relief. ... See Fed. R. Civ. P. 65(d)(2); Nunez, No. 119CV00686SABPC, 2019 WL 5390531 at *2 (citing Murphy Bros., Inc., 526 U.S. at 350).

In some instances however,  a Court may issue a TRO without written or oral notice to the adverse party, but may do so only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," and Plaintiff "certifies in writing any efforts made to give notice and the reasons why it should not be required."  Fed. R. Civ. P. 65(b)(1)(A),(B). These restrictions are stringent as they "reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." Granny Goose Foods, Inc., 415 U.S. at 438-39, 94 S.Ct. 1113.

In order to establish that preliminary injunctive relief should be granted, a plaintiff must "demonstrate that irreparable injury is *likely* in the absence of an injunction."  Nunez, 2019 WL 4127205, at *2.  This requires that a plaintiff allege "specific facts in an affidavit or a verified complaint [which] clearly show" a credible threat of "immediate and irreparable injury, loss, or damage." Fed. R. Civ. P. 65(b)(1)(A). In the instant case, Plaintiff provides in his declaration that he was denied his right to participate in Ramadan in April 2021 and 2022 because he was on the list for a Kosher Diet instead of on the list for a RMA (Ramadan) Diet.  (Pltf Decl, ECF No. 11 at 7.)  Pursuant to the prison's policy, which Plaintiff claims is statewide (see, Smith above),

he is not allowed to participate in Ramadan if he is on a Kosher Diet, which he states he is on. Plaintiff asserts that it is lawful for him, according to the Holy Qur'an, to follow a Kosher Diet, and he prefers the Kosher Diet because it is prepared, manufactured, stored, and served on non-contaminated dishes in accordance with Plaintiff's Islamic religious beliefs.

However, Plaintiff's declaration does not contain allegations that he is currently, or in the immediate future, being denied participation in Ramadan by the defendants named in his Complaint. In fact, Plaintiff's declaration implies that Plaintiff will not be subject to denial of participation in Ramadan, if at all, until March 2023 when the next time Ramadan is celebrated.[1] Therefore, Plaintiff has necessarily failed to show, for purposes of justifying preliminary injunctive relief, any likelihood of an immediate and irreparable injury.

Plaintiff's allegations that he currently faces immediate and irreparable harm is therefore speculative and not well taken. Caribbean Marine Servs. Co. v. Baldridge, 844 F.2d 668, 674 (9th Cir. 1988) ("Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." (citation omitted)). Consequently, Plaintiff has failed to establish that he currently faces the type of immediate and credible threat of irreparable harm necessary to justify extraordinary injunctive relief at this stage of the case. See Alliance for the Wild Rockies, 632 F.3d at 1131 ("Under Winter, plaintiff[ ] must establish that irreparable harm is likely, not just possible"); Goldie's Bookstore, Inc. v. Superior Court of State of Cal., 739 F.2d 466, 472 (9th Cir. 1984) ("Speculative injury does not constitute irreparable injury"); Rigsby v. State, No. CV 11-1696-PHX-DGC, 2013 WL 1283778, at *5 (D. Ariz. Mar. 28, 2013) (denying prisoner's TRO based on fear of potential future injury based on past assaults); Chappell v. Stankorb, No. 1:11-CV-01425-LJO, 2012 WL 1413889, at *2 (E.D. Cal. Apr. 23, 2012) (denying injunctive relief where prisoner's claims of injury based on current or future housing decisions were nothing "more than speculative"), report and recommendation adopted, No. 1:11-CV-01425-LJO, 2012 WL 2839816 (E.D. Cal. July 9, 2012). A presently existing actual threat must

---

[1] Ramadan for the year 2023 starts on the evening of Wednesday, March 22nd lasting 30 days and ending at sundown on Thursday, April 20. Islamic holidays always begin at sundown and end at sundown the following day/days ending the holiday or festival. Calendardate.com/ramadan_2023.htm (last visited on July 26, 2022.)

be shown, even though injury need not be certain to occur. See Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 130-31, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969); FDIC v. Garner, 125 F.3d 1272, 1279-80 (9th Cir. 1997); Caribbean Marine Servs. Co., 844 F.2d at 674.

For all the foregoing reasons, Plaintiff's motion for a temporary restraining order and/or preliminary injunction should be denied.

## V.     CONCLUSION AND RECOMMENDATIONS

Accordingly, **IT IS HEREBY ORDERED** that the Clerk of Court randomly assign a United States District Judge to this case.

**AND**

Based on the foregoing, **IT IS HEREBY RECOMMENDED** that Plaintiff's motion for a temporary restraining order and/or preliminary injunction, filed on June 17, 2022, be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after the date of service of these findings and recommendations, Plaintiff may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **July 27, 2022**            **/s/ Gary S. Austin**
                                       UNITED STATES MAGISTRATE JUDGE